HEATHER E. WILLIAMS, #122664
Federal Defender
LINDA C. HARTER, # 179741
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700
Fax: 916-498-5710
Linda_Harter@fd.org

Attorney for Defendant
KRISTY FELKINS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No:  2:20-cr-0175-TLN |
| Plaintiff, | **MS. FELKINS FORMAL OBJECTIONS** |
| vs. | Date:  July 20, 2023 |
| KRISTY FELKINS, | Time: 9:30 a.m. |
| Defendants. | Judge: Hon. Troy L. Nunley |

**I.     INTRODUCTION**

Ms. Kristy Felkins pled guilty to 18 USC §1958, an offense for which the maximum possible penalty is 120 months.  The presentence report has calculated the guidelines in this case using USSG section 2A1.5 as offense level 34, criminal history category I, with a range of 151-188 months.  This is a case involving a person with no prior arrests whatsoever, and where no injury or any other aggravating factor exists.  This Court should disregard the guidelines as applied to this case as they were not based on any empirical evidence and do not make good policy sense.  This memorandum will explain why the cross reference to section 2A1.5 should not be applied to this case and why even the section 2E1.4 guidelines should not be given any weight by this Court.  In addition, this memorandum will explain that the PSR does not take into consideration new guideline amendment for defendants with zero criminal history points that will soon be in effect recommending a 2 level decrease from the offense level.  Although the

presentence report indicates in one section that no factors have been identified that would support neither a departure or variance from the guidelines, it is the defense position that there are factors in this case that would support both a departure (under two separate sections) and a variance. Those factors, set forth more fully below, include that this incident was prompted by a mental illness, the abuse suffered by Ms. Felkins and her kids and represents aberrant behavior by Ms. Felkins. The extent of the variance in this case will be addressed in a separate sentencing memoranda addressing each of the factors of 18 U.S.C. §3553(a)[1]. This memoranda addresses only one sentencing factor - the application of the U.S. Sentencing Guidelines.

## II.   GUIDELINES POLICY OBJECTIONS

### A.   GUIDELINE SECTION 2A1.5 IS INAPPLICABLE HERE

We object to the application of USSG section 2A1.5 to this case. The correct guideline for a violation of 18 USC §1958 is USSG section 2E1.4.

Appendix A of the USSG indicates that the guideline section for a violation of 18 USC 1958 is section 2E1.4. Section 2E1.4 is entitled "Use of Interstate Commerce Facilities in the Commission of Murder for Hire". This exactly describes the offense of conviction in this case. Under section 2E1.4(a)(2) the base offense level would be 32.[2]

Subsection 2E1.4(a)(2) suggests a cross reference to the "offense level to the underlying unlawful conduct". Probation has used this subsection to switch the applicable guideline section to 2A1.5. Probation equates the "underlying unlawful conduct" in this case with conduct that would violate 18 USC §373. Were she conviction under this statute, Ms. Felkins' maximum possible penalty would be 20 years, not the ten year maximum she faces under the statute of conviction.

Ms. Felkins was convicted under 18 USC §1958(a). This statute actually contains three possible offenses. First, a person might violate this statute as Ms. Felkins did by (1) using the internet to (2) solicit murder for hire, (3) in return for anything of value. The maximum penalty

---

[1] The defense is requesting a probationary sentence in this case.
[2] At base level 32, less 3 levels for acceptance and two levels for there anticipated 4C1.1 reduction, the adjusted base offense level would be 27. The range would be 70-87 before considering any departure or variance.

for a conviction under this section, as previously state, is 10 years.  The second way to violate this statute is by satisfying the first 3 elements already set forth and (4) where the solicitation actually results in injury.  The maximum penalty for violating this section of the statute is 20 years.  If a fifth element is also met (5) that a death results the maximum penalty becomes life imprisonment or death.

      First it is the defense position that for this case, a case in which only the first section of 18 USC §1958 applies (and a case in which there was never any chance of physical harm since the person(s) she contacted were scam artists), that the correct guideline is 2E1.4.  If the guideline is read to apply the cross reference for any case in which solicitation for murder using the internet was done, then under no circumstances would 2E1.4 ever apply for a conviction of 18 USC §1958.  This cannot be the Commission's intent, otherwise section 2E1.4 is completely superfluous.

      The guidelines themselves bear this out.  Under 2E1.4, for a conviction of the first section of §1958, with acceptance and no criminal history points, the guidelines would be 87-108.  Applying the cross reference, the guidelines would then be 151-188, well over the maximum possible penalty, even for a criminal history I with no aggravating factors.  In other words, for a first-time offender with no aggravating factors the guidelines would advise 120 months, the maximum possible penalty *in every single case*.  This does not make sense and is contrary to the purpose of the "advice" the guidelines are supposed to supply.  That would advise the maximum penalty for the first-time offense as well as the offender with multiple priors.  That would also advise the maximum penalty for the offender who goes to trial and expresses no remorse as well as the person, like Ms. Felkins who pleads guilty early on and takes responsibility for the crime.  Chapter A of the guidelines in policy statement 3, the Commission notes that one of the primary purposes of the guidelines is to provide "proportionality" in sentencing.  That means that the conduct of differing severity, committed by defendants with different criminal histories should be addressed differently.  If this cross reference applies to every conviction for violations of 18 USC §1958, if it advises 120 months for every person, that would, in effect, eliminate

-3-

proportionality in sentencing. Furthermore, it would eliminate the effect of accepting responsibility as the guideline would be the same whether a person admitted guilt or when to trial.

As discussed in *United States v. Temkin*, 797 F.3d 682 (9th Cir. 2015), the Guidelines for 18 USC § 1958, in this particular cross reference, does not make sense as written.[3] The guidelines are meant to create a sense of fairness and uniformity in sentencing. However, the interplay of USSG section 2E1.4 and USSG section 2A1.5 creates disparity and confusion.[4] Neither are worthy of deference or trust.

In *Temkin* the 9th Circuit was unable to imagine a scenario in which the cross reference to section 2A1.5 would not apply to a person convicted of 18 USC §1958, as both are "solicitation" offenses. However, as previously mentioned this can't be the case because that would render section 2E1.4 completely superfluous. The court failed to note that 18 USC §373 actually does require different elements of proof than §1958. For example, §373 requires the government to prove that the solicitation was made "under circumstances strongly corroborative of that intent". There are also affirmative defenses to this statute written into §373(b) that do not apply to §1958. For example, if a person repudiates the solicitation or changes their mind, that might be an affirmative defense to the former allegation. Had Ms. Felkins been charged under this provision instead she may have assertive that affirmative defense. Clearly not every conviction of §1958 merits this cross reference and this case does not.

**B. USSG SECTIONS 2E1.4 AND 2A1.5 ARE NOT ENTITLED TO DEFERRENCE AS A POLICY**

The history of USSG 2E1.3 and 2A1.5 show that the offense levels set forth in those sections cannot be relied on to result in a fair sentence under 18 USC §3553(a). As an example, only three years after the first Sentencing Guidelines manual was published, Amendment 311

---

[3] Although the court in *Temkin* seems to throw up its hands and say that it appears the plain language of the guidelines would mandate the cross reference in every case, a look at the Sentencing Commission data from 2017 through 2021 illustrates the confusion and resistence on this point. The data shows that 46 cases went to sentencing with 18 USC §1958 as the only statute of conviction during that time period. In half of those case, 23 district court judges applied USSG 2E1.4 as the operative guideline (with a base level of 32), while the other half used 2A1.5 as the operative guideline (with a base level of 33 and a 4 level increase in every case – for a total offense level of 37).
[4]

-4-

made several substantive changes to this guideline that dramatically increased its harshness. That Amendment increased the base offense level from 23 to 32.[5] It also added USSG section 2A1.5 to cover "conspiracy or solicitation to commit murder." The base offense level for USSG section 2A1.5 was set originally at 28, with an additional 4 levels for offering anything of pecuniary value. Accordingly, although this amendment dramatically increased the advisory punishment for the offense by nine levels, it kept sentencing equal whether sections 2E1.4 or 2A1.5 were used, as both would result in an offense level 32. Then, in Amendment 553 (effective November 1, 2004), the Sentencing Commission again increased the base offense level for this type of offense in section 2A1.5(a) from 28 to 33, which means that with the 4 level increase that would always apply the true offense level under that section became 37, 15 levels higher than the original offense level for this crime (§1958) pre-1990. This was spurred by the PROTECT Act of 2003 and public comment about the guideline penalties for homicides. It does not appear that the Commission considered the interplay between sections 2A1.5 and 2E1.4 – rather it increased sentenced for multiple guidelines, including the conspiracy/solicitation guideline, by 5 levels across the board. None of this was based on any empirical evidence or even based on sentencing by district courts.

Another bizarre anomaly in the interplay between these guideline sections regards the 4 level increase for pecuniary gain under section 2A1.5. The appendix says that for a conviction of 18 USC §1958, the use of the internet to solicit the crime, the base level is 32 under section 2E1.1. In order to be convicted under §1958 the government must prove the element that the solicitation involved "pecuniary gain". In other words, that offense characteristic is already "baked into" the base offense level and it would be duplicitous to add offense levels for cases

---

[5] The first version of the guidelines took into account the possible penalties for each offense (including any mandatory minimums), looked at average sentences around the county for the offense pre-guidelines, and attempted to arrive at some consensus of the appropriate sentence while building in proportionality to take into account those with prior criminal histories and to factor in acceptance of responsibility. Under this approach the base offense level here, before the wanton increases of subsequent amendments was 23. Less three levels for acceptance it would be 20. The range before considering departures would then be 33-41 months under the guideline as originally written. Factoring in the coming reduction for those defendants with zero criminal history which is based on empirical evidence regarding recidivism, the range would be 27-33. This range is based on at least some study of average sentences and evidence. The current offense level takes none of these important values into consideration.

that involved pecuniary gain – they all do.  Solicitation of this same crime pursuant to the racketeering charge of 18 USC §373 does not require the government to prove that 'pecuniary gain' element.  The base offense level there, in section 2A1.5 is 33.  This guidelines section has a 4-level increase if the offense involves 'pecuniary gain'.  If this cross reference applies each time a defendant is conviction of 18 USC §1958 then the 4 level increase necessarily applies since it is built into that statute.  However, this increase might not apply to the racketeering version of solicitation.  This makes no sense.  The practical effect is to increase the advisory range in every case of a conviction under §1958(a) to exceed, by a large amount, the maximum possible sentence.  This is true even though the maximum penalty (a measure of seriousness) for §1958(a) is half that for 18 USC §373.  Again, the interplay between these subsections defies logic.

The Supreme Court reaffirmed that district courts have the authority to vary from the Guidelines based on policy disagreements which any particular section of the guidelines.  *U.S. v. Spears*, 555 U.S. 261, 262 (USSC 2009); see also *Kimbrough v. U.S.* 552 U.S. 85 (USSC 2007). This is in addition to the district court's authority to decide that the guidelines are excessive in any particular case.  This allows for a categorical variance from any guidelines when the district court makes a reasoned decision that the guideline does not serve the purposes of sentencing. Courts have so decided regarding various sections of the guidelines, including for example the "actual" v. mixture methamphetamine distinction or the crack v. powder cocaine disparity.   See *U.S. v. Carrillo*, 440 F.Supp.3d 1148, at 1157 (E.D. Cal. 2020)(citing *United State v. Johnson*, 379 F.Supp.3d 1213, 1227 (M.D. Ala. 2019); *United States v. Hayes*, 948 F.Supp.2d 1009, 1014 (N.D. Iowa 2013); *United States v. Ibarra-Sandoval*, 265 F.Supp.3d 1249, 1252 (D.N.M. 2017). This Court should look at the history of this guideline, the huge increases that were not based on any empirical evidence and which erased any proportionality between defendants and which *raised the guidelines to the statutory maximum in every case*, and, as a policy matter, decline to follow the advice of the subsequent amendments to the original guideline.

### C.  USSG SECTION 4C1.1 SHOULD BE APPLIED

The Sentencing Commission has already published new guidelines in the Federal Register (on February 2, 2023, see 88 FR 7180), that will take effect on November 1, 2023.  One

of the new guidelines provisions is section 4C1.1. Under this new subsection of the guidelines, defendants, like Ms. Felkins, with zero criminal history points, will receive a 2 level decrease in the applicable offense level. This new amendment, which will be in effect on November 1 of this year, would apply to Ms. Felkins as she has never been convicted, or even arrested, for any other crime. Thus, the appropriate starting point to consider any departure or variance from the guidelines due to Ms. Felkins' postpartum psychosis and her prior history as a victim of abuse should be after the application of this reduction.

This reduction is the result of the Sentencing Commission's study of recidivism which noted that persons with zero criminal history points have "considerably lower recidivism rates that other offenders…" Amendment Commentary, p. 52. The Commission also consider as "feedback" the fact that less that 40% of persons with a zero criminal history point score were receiving sentences within the guideline range. A statistic that clearly indicated the guidelines were not good at addressing this offender characteristic. *Id.* The reasons for this change in the guidelines is sound and this change is long overdue. There is absolutely no rational reason not to apply this change to Ms. Felkins now, or in the alternative, delay her sentencing until after this guideline formally takes effect.

### III.     DEPARTURE FACTORS

In paragraph 94 and elsewhere the presentence report states that no factors have been identified that might support a recognized departure from the advisory guidelines. In fact, the facts in this case support two grounds for departure in this case. The first is "diminished capacity" pursuant to 5K2.13 and the second is "aberrant behavior" pursuant to 5K2.20. The Supreme Court has indicated that even though the guidelines are now advisory and only one factor under 18 USC §3553(a) for the Court to consider, the district courts must still calculate the guidelines including possible grounds for departures. *Rita v. United States*, 551 US 338, at 351 (USSC 2007).

####     A.   USSG 5K2.13

There is no doubt that at the time of this offense Ms. Felkins was suffering from a mental health disease. We know that she was diagnosed by her gynecologist shortly before this offense

with Postpartum Depression or "PPD". PPD affected both her mood and her behavior. At the time of this offense she had begun treatment for PPD, but had then lost her health insurance and was unable to continue seeing her doctor and she was not able to continue with the prescribed medication. Her condition worsened. At the time of this offense, she was suffering from Postpartum Psychosis or "PPP" – an even more serious mental health disease that would have affected her judgement, her behavior, and her ability to rationally make decisions. Filed separately under seal is the report of Diana L. Barnes, a clinical psychologist with 30 years of experience treatment women with pregnancy and postpartum related mood disorders. Her conclusion after reviewing Ms. Felkins' medical records, her treatment records while on pretrial release, information from her family and after examining Ms. Felkins, is that at the time of this offense Ms. Felkins was suffering from postpartum psychosis. Ms. Barnes notes that "*postpartum psychosis is often described as a "cognitive disorganization psychosis" and presents with a constellation of symptoms that include hallucinations and/or delusions; extreme thought disorganization, cognitive confusion, and dissociation; severe insomnia; agitation and restlessness; increased irritability, and aggressiveness. Dissociation causes a disruption in conscious thought. Because psychosis creates a break with reality-testing, it disables logical and rational thought.*" This offense happened during this time period, when Ms. Felkins normal thought process and rational decision-making processes were severely impaired.

In addition to this postpartum illness, Ms. Felkins was also suffering from major depression and PTSD. These conditions were a result of past sexual abuse from her childhood as well as abuse at the hands of her ex-husband. This past abuse is documented in the presentence report and the accompanying letters from Ms. Felkins and her family. The past diagnosis of depression, predating this offense, was evidenced in Ms. Felkins' medical records. Further, the PTSD diagnosis is documented by the treatment provider who has been treating Ms. Felkins since her release from custody in early 2020. (This provider was arranged through pretrial services in Nevada.) Depression and PTSD are noted risk factors for both PPD and PPP and

likely played a role in her untreated illness in 2016.[6]

There is no doubt that at the time of this offense Ms. Felkins was suffering from an untreated mental health disease, that it affected her behavior and judgment and thus reduced her mental capacity to make considered judgments.  Further, this reduced mental capacity was not related to the use of drugs or alcohol.  The offense involved to actual violence or any real threat of violence (as she solicited a scam artist).  There is no need to protect the public from Ms. Felkins because she has been receiving mental health treatment for three years and her treatment provider has indicated that she has been devoted to maintaining her health.  Her lack of criminal behavior both before and after this incident also indicate that she presents no risk to the victim in this case or anyone else.  For all of these reasons, she satisfies the criteria for a departure for diminished capacity pursuant to USSG section 5K2.13.

**B.    ABERRANT BEHAVIOR 5K2.20**

Ms. Felkins has no prior criminal convictions, arrests or even citations before committing this offense.  She committed this offense during a brief period of time when she was suffering from untreated mental illness.  The offense was of a limited duration, occurred only on the internet and was a marked deviation from her otherwise law-abiding life.  No violence occurred as a result of this offense, no drugs were involved, no firearm or other dangerous weapon was involved.   For all of these reasons, a departure from the guidelines under section 5K2.20 would be warranted.

**IV.    CONCLUSION**

The defense requests that this Court find that the application of the guidelines as they are currently written are excessive as a general matter and as applied to this case.  The defense suggests that the court apply the guideline as originally intended (for an offense level of 20 with acceptance of responsibility), prior to the amendments, or disregard them entirely.  The defense requests that the Court consider the evidence underlying the new provision for defendant's with zero criminal history points and reduce Ms. Felkins sentence accordingly.  Furthermore, the

---

[6] The defense has supplied the Ms. Felkins' medical records from this period to probation and to our expert.  The relationship between these issues and the development of postpartum psychosis is addressed in her report.

defense requests that this Court depart from the guidelines to a sentence of probation because she was suffering from postpartum psychosis which impaired her ability to make reasonable decisions and directly led to her aberrant behavior in committing this offense.

Dated:  June 16, 2023

                                    HEATHER E. WILLIAMS
                                    Federal Defender

                                    */s/ Linda Harter*
                                    LINDA C. HARTER
                                    Attorney for Defendant
                                    KRISTY LYNN FELKINS